UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AZHAR CHAUDHRY; ARS RESTAURANT, INC.; and LUCKY STAR #5409, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 15-cv-3504 |
| INTERNATIONAL HOUSE OF PANCAKES, LLC, | ) ) | Judge John W. Darrah |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Azhar Chaudhry, ARS Restaurant, Inc., and Lucky Star #5409, Inc.

(collectively "Chaudhry") filed suit against Defendant International House of Pancakes, LLC

("IHOP"), on April 21, 2015, alleging two counts of breach of contract, discriminatory conduct

in violation of 42 U.S.C. § 1981, and violations of the Illinois Franchise Disclosure Act of 1987.

Defendant filed a counterclaim against Plaintiffs, alleging breach of contract, and trademark

infringement and unfair competition pursuant to 15 U.S.C. § 1114 and § 1125(a) of the Lanham

Act.  Defendant now moves for a preliminary injunction, seeking to enjoin Plaintiffs from:

(1) using any trademark, service mark, logo, or trade name that is confusingly similar to IHOP's

trademarks; (2) otherwise infringing upon IHOP's trademarks or using any similar designation,

alone or in combination with any other component; (3) passing off any of its goods or services as

those of IHOP or IHOP's authorized franchisees; (4) causing likelihood of confusion or

misunderstanding as to the source of sponsorship of its business, goods, or services; (5) causing

likelihood of confusion or misunderstanding as to its affiliation, connection, or association with

IHOP and IHOP's franchisees or any of IHOP's goods or services; and (6) unfairly competing

with IHOP or IHOP's franchisees, in any manner.  Plaintiffs oppose Defendant's Motion for Preliminary Injunction.  For the reasons provided below, Defendant's Motion for Preliminary Injunction [13] is granted.

## BACKGROUND

The following facts are taken from the Complaint, Answer and Counter-Complaint, the submitted exhibits, and other documents on the record.  Plaintiff Azhar H. Chaudhry is a Muslim American who emigrated from Pakistan and is a naturalized American citizen, residing in Illinois.  Plaintiff ARS Restaurant, Inc. ("ARS") and Plaintiff Lucky Star #5409, Inc. ("Lucky Star") are Illinois corporations created by Chaudhry, the sole shareholder of each company.   ARS's principal place of business is in Arlington Heights, Illinois, where it operates a franchised IHOP restaurant ("Arlington Restaurant").  Lucky Star's principal place of business is in Bridgeview, Illinois, where it operates a franchised IHOP restaurant. Lucky Star previously operated another franchised IHOP restaurant in St. Charles, Illinois.  Defendant IHOP is a Delaware limited-liability company with its principal place of business in Glendale, California.

IHOP is a franchisor of nationally recognized restaurants, serving pancakes and breakfast, lunch, and dinner items.  IHOP has adopted and used in interstate commerce, and licensed to authorized franchisees, certain trademarks. These trademarks are registered with the United States Patent and Trademark Office in connection with the operation of IHOP restaurants. Franchise agreements between IHOP and its franchisees grant franchisees the right to use IHOP trademarks in their operation of IHOP restaurants at the locations and on the terms specified in their franchise agreements.  In exchange for these and other benefits and services, IHOP receives payments from its franchisees.

On August 31, 2004, Chaudhry entered into a franchise agreement with IHOP. The agreement granted Chaudhry the right to operate the Arlington Restaurant and use IHOP's trademarks and system. The franchise agreement provides that "[f]ranchisee shall operate the Franchised Restaurant in strict compliance with all Applicable Laws and with the standard procedures, policies, rule and regulations established by Franchisor…or in Franchisor's Operations Bulletins." (Dkt. # 14 Exh. A.) Under this agreement, IHOP has the right to conduct Operational Evaluations ("OE") of the restaurant to make sure it is in compliance with IHOP system standards set forth in the Operations Bulletins. (Dkt # 6, 14.) The agreement defines "Material Breach" to include "a failure to comply with Franchisor's Operations Bulletins . . . " (Dkt. # 14 Exh. A.) In the event of a material breach, IHOP is permitted to terminate the franchise agreement after providing notice of default and following the franchisee's failure to cure such default within seven days. *Id.* Upon termination of the franchise agreement, the franchisee is required to discontinue use of IHOP trademarks and not operate or do business under any name or in any manner that might give the impression to the general public that it is operating an authorized IHOP restaurant. (Dkt. # 14 Exh. A and A-1.)

From March 16, 2014 through April 2, 2015, IHOP conducted six OE's of the Arlington Restaurant. These OE's found violations of food safety, premises safety and appearance, and restroom sanitation, among other things[1]. (Dkt. # 14.) The Arlington Restaurant was also inspected by a third-party contractor, EcoSure Food Safety Solutions, as well as the Arlington

---

[1] Specifically: cooks not washing their hands before handling and preparing food; cooks without hair restraints; improperly handled raw meat; food products on the preparation line beyond their expiration dates; raw meat stored in walk-in cooler near batters and dressing for the cooking line; improperly blanched bacon; mold on the ice machine; and dirty meat slicer with old food debris, etc. (Dkt. #14 Exh. B.) In all six of the OE's, Chaudhry failed questions pertaining to sanitation, premises safety, and other IHOP standards.

Heights Health Department. Chaudhry received passing scores on these inspections, but the reports also note food safety, food handling, and hygiene issues. (Dkt. # 18.)

On February 20, 2015, after finding that Chaudhry failed the four consecutive OEs, IHOP sent Chaudhry a notice of default. (Dkt. # 14 Exh. A and A-2.) After Chaudhry failed two more OEs, IHOP issued a Notice of Termination that terminated the franchise agreement for the Arlington Restaurant on April 17, 2015. (Dkt. # 6, 14.) Chaudhry continues to operate the Arlington Restaurant under IHOP trademarks. (Dkt # 14, 18.)

Based on these facts alleged, Defendant contends they have suffered and will continue to suffer irreparable harm by Plaintiffs' conduct, absent the entry of a preliminary injunction.

## LEGAL STANDARD

The threshold requirements for obtaining a preliminary injunction are: (1) a demonstration that the movant's case has "some likelihood of success on the merits"; and (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011)). If those conditions are met, "the district court 'must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). The district court is also obligated to consider the public interest in granting or denying a request for a preliminary injunction and then, after weighing these competing factors, determine the most appropriate relief. *Stuller*, 695 F.3d at 678.

4

# ANALYSIS

*Likelihood of Success on the Merits*

To demonstrate some chance of success on the merits, IHOP must demonstrate a "better than negligible chance of succeeding on the merits." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997) (citation and quotations omitted). "This is an admittedly low requirement and is simply a threshold question." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (citation omitted).

## Breach of Contract

IHOP argues that Chaudhry breached the Arlington Restaurant's franchise agreement by failing six consecutive OE's and failing to comply with IHOP's Operations Bulletins. IHOP evaluates the performance of each of its franchisees using a system known as an "A/B rating system." Chaudhry does not dispute that IHOP gave the Arlington Restaurant failing grades on its OE's. According to the franchise agreement, failure to follow IHOP's Operations Bulletins constituted a material breach. IHOP contends that Chaudhry failed to cure this material breach after receiving the notice of default and that termination of the Arlington Restaurant's franchise agreement was proper. Chaudhry argues that these violations of IHOP's standard operating procedures and other specifications were either cured, scheduled to be cured, or unable to be cured due to weather or timing of the inspection. However, even if Chaudhry did cure some of these individual violations, the franchise agreement provides that "if there shall be a course of conduct in bad faith followed by Franchisee over an extended period in providing good cause for termination and, subsequently, timely curing of deficiencies upon receipt of notice of default, such continued and repeated course of conduct shall itself be good cause for immediate

termination . . . " (Dkt. # 13 Exh. A.)  IHOP notes that Chaudhry's repeated failing OE grades provided grounds for termination.

Chaudhry also alleges that IHOP terminated the franchise agreement in bad faith due to racial animus and racial discrimination.  However, these allegations are not relevant to a motion for preliminary injunction to enforce a contract termination based on material breach of the franchise agreement.  *See 7-Eleven, Inc. v. Spear*, No. 10-CV-6697, 2011 WL 830069, at *4 (N.D. Ill. Mar. 3, 2011); *Dunkin' Donuts Inc. v. Liu*, 79 Fed. Appx. 543, 547 (3d Cir.2003). Chaudhry's claim that IHOP breached the covenant of good faith and fair dealing is irrelevant to whether Chaudhry is in breach of the franchise agreement after its termination.  IHOP provided sufficient evidence that Chaudhry's failed OE grades justified termination of the franchise agreement and that the continued use of IHOP trademarks is a violation of Chaudhry's post-franchise obligations.  Thus, IHOP has demonstrated a chance of succeeding on the merits for its breach of contract claim.

### *Trademark Infringement*

IHOP also argues that Chaudhry is in breach of trademark law by continuing to use IHOP's trademarks after the termination of the franchise agreement for the Arlington Restaurant. As a preliminary matter, Chaudhry cites to *Servpro Indus., Inc. v. Schmidt*, No. 94C 5866, 1997 WL 158316, at *10 (N.D. Ill. Mar. 31, 1997), to argue that to prevail on a trademark infringement claim against a former franchisee for post-termination use of the marks, IHOP must first establish that the franchise agreement was legally terminated.  As IHOP correctly points out, the court in *Jake Flowers, Inc. v. Kaiser*, No. 01 C 4247, 2002 WL 31906688 at *5 (N.D. Ill. Dec. 31, 2002), found this holding inconsistent with Seventh Circuit authority, specifically *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989),

stating that "legal termination of a franchise agreement is not a condition precedent to an action for infringement." *Jake Flowers, Inc.*, 2002 WL 31906688 at *5.

Chaudhry further argues that the validity of the franchise agreement termination should be addressed before it is enjoined from further use of IHOP's trademarks, citing to *In re A&F Enterprises, Inc. II*, 742 F.3d 763, 769 (7th Cir. 2014) ("*In re A&F*"). However, this case is inapposite and involved a request to stay a bankruptcy court's orders pending resolution of an appeal of those orders on the merits. IHOP argued that because A&F did not assume the building leases attached to its franchises within 120 days nor sought extension during its Chapter 11 bankruptcy proceedings, the building leases, and by extension the franchise agreements, were expired. Thus, A&F's use of IHOP's trademarks was unauthorized. IHOP sought a stay of A&F's continued operation of its restaurants because of the bankruptcy proceedings, and not due to violations of a franchise agreement. Further, the harms discussed in this case are based on entirely different circumstances; the harm that may result from a preliminary injunction is not the same as the harm resulting from interference with a Chapter 11 debtor's reorganization efforts. *In re A&F,* 742 F.3d at 768.

Once a franchise has been terminated, the franchisee cannot be allowed to keep on using the trademark. The owner of a trademark has a duty to ensure the consistency of the trademarked good or service. *Gorenstein*, 874 F.2d at 435. "The purpose of a trademark, after all, is to identify a good or service to the consumer, and identity implies consistency and a correlative duty to make sure that the good or service really is of consistent quality, i.e., really is the same good or service. If the owner of the trademark has broken off business relations with a licensee, he cannot ensure the continued quality of the (ex-)licensee's operation, whose continued use of the trademark is therefore a violation of trademark law." *In re XMH Corp.,* 647 F.3d 690,

695 (7th Cir. 2011) (quoting *Gorenstein*, 874 F.2d at 435); *see also General Electric Co. v. ASpeicher*, 877 F.2d 531, 534 (7th Cir.1988) (recognizing as "sensible" case law holding that the continued use of a trademark by an ex-licensee violates 15 U.S.C. § 1114(1)(a)).

It is undisputed that the franchise agreement for the Restaurant was terminated. Whether the franchise agreement was legally terminated is not a defense to trademark infringement in this instance, as "[t]he franchisee may seek other remedies for damages it may suffer from a franchisor's unlawful action, but continued use of the trademarks is not such a remedy." *Gorenstein*, 874 F.2d at 435. Chaudhry's continued use of IHOP's trademarks is a violation of trademark law. Thus, IHOP has demonstrated a chance of success on the merits for its trademark infringement claim.

*Unfair Competition*

IHOP is entitled to protection under Section 43 of the Lanham Act if it establishes that Chaudhry's use of IHOP's trademarks constitutes a false designation of origin or false representation and that the public is likely to be confused by that use. The unauthorized use of a trademark after termination of a franchise agreement, falsely designating the source or sponsorship of goods or services, constitutes a violation. *Century 21 Real Estate Corp. of N. Illinois v. R.M. Post, Inc.,* No. 88 C 0077, 1988 WL 84741, at *2 (N.D. Ill. Aug. 9, 1988) There is a substantial likelihood that Chaudhry's continued use of IHOP's trademarks after termination of the Restaurant's franchise agreement would cause consumer confusion, and a violation of Section 43(a) of the Lanham Act. *See 7-Eleven, Inc. v. Spear*, No. 10-CV-6697, 2011 WL 830069, at *5 (N.D. Ill. Mar. 3, 2011). Continued operation of the Arlington Restaurant using IHOP trademarks would falsely designate the source of its goods and services. Thus, IHOP has demonstrated a chance of success on the merits for its unfair competition claim.

*No Adequate Remedy at Law and Risk of Irreparable Harm*

The Seventh Circuit has frequently held that injuries to reputation and goodwill due to trademark infringement constitute irreparable harm for which there is no adequate legal remedy. *Girl Scouts of Manitou Council*, 549 F.3d at 1089; *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001); *see also Processed Plastic Co. v. Warner Communications, Inc.,* 675 F.2d 852, 858 (7th Cir. 1982). This harm is based on the premise that the victim of trade infringement cannot control the nature and quality of the infringer's goods. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). After termination of the franchise agreement, IHOP no longer has control of the nature and quality of the goods provided by Chaudhry at the Arlington Restaurant. Chaudhry does not dispute that the Arlington Restaurant failed six consecutive OE's, exhibiting violations of IHOP's standard operating procedures and systems. If Chaudhry continues to operate the Arlington Restaurant using IHOP's trademarks, it is reasonable to conclude that this pattern of behavior will continue and Chaudhry will continue to violate IHOP's standards. As set out above, some of the previous violations involved food safety, premises safety and appearance, and restroom sanitation. Continued infractions would cause injury to IHOP's goodwill and reputation in the community and possibly affect the goodwill and reputation of other franchisees. Therefore, IHOP has satisfied the irreparable harm requirement.

*Balancing of Harms and Public Interest*

Chaudhry argues that the balance of harms favors a denial of the preliminary injunction because, if granted, it will harm him financially and ruin the goodwill and reputation he has developed in the Arlington Heights community. While Chaudhry will presumably suffer a loss of profits if prevented from operating the Arlington Restaurant, he has provided no evidence and

little argument that this financial loss and loss of reputation would outweigh the harm to IHOP from his continued use of its trademarks. Instead, he argues that IHOP would only benefit from the profits and his continued "positive relationship and reputation" with the surrounding community if allowed to continue to operate the Arlington Restaurant. This argument has little merit compared to the established potential harm to IHOP due to customer confusion and potential injury to its goodwill and reputation resulting from Chaudhry's continued use of IHOP's trademarks. The harm Chaudhry would suffer if a preliminary injunction is granted would not outweigh the harm IHOP would suffer if relief is denied.

Finally, Chaudhry argues that the public interest would be best served by denying IHOP's motion for injunction because IHOP's alleged discriminatory practices constitute abuse by a franchisor, and protecting the rights of a franchisee against this type of unfair treatment would benefit the public. There is a general public interest in protecting the rights of a franchisee against discriminatory actions by a franchisor, but these allegations are not sufficiently supported by the submitted evidence. Because these allegations remain a theory, it is not reasonable to assume that granting IHOP's motion for a preliminary injunction would encourage discriminatory practices. In contrast, it is well established that the public interest would be served by the injunction because enforcement of the trademark laws prevents consumer confusion. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). As indicated above, Chaudhry's continued operation of the Arlington Restaurant creates a strong risk of customer confusion, and an injunction would be in the public interest.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for a Preliminary Injunction [13] is granted.

Date: ___August 26, 2015___                                    
JOHN W. DARRAH
United States District Court Judge